UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------------

JEROLD WILLIAMS,

                        Plaintiff,                  **MEMORANDUM & ORDER**
                                                        13-CV-1860 (MKB)

              v.

FRANK MARTZ COACH COMPANY, PATRICK
GRAHAM and LIANG TIAN,

                        Defendants.

-----------------------------------------------------------------

MARGO K. BRODIE, United States District Judge:

       On February 27, 2013, Plaintiff Jerold Williams commenced the above-captioned case against Defendants Frank Martz Coach Company ("Martz"), FH Family LP ("FH Family"), Patrick Graham, and Liang Tian, in New York State Supreme Court, Kings County. On April 3, 2013, Defendants removed the case to this Court. On July 10, 2013, the parties stipulated to the dismissal of all claims against FH Family ("July 10, 2013 Stipulation"). (Docket Entry No. 34.) On July 10, 2013, Martz and Graham ("Defendants") requested a pre-motion conference in anticipation of, *inter alia*, moving to transfer this action to the Middle District of Pennsylvania. (Docket Entry No. 33.) On September 12, 2013, the Court held a pre-motion conference where it heard oral argument and denied Defendants' application to transfer without prejudice. (Minute Entry dated Sept. 12, 2013.) Defendants now move pursuant to 28 U.S.C. § 1404(a) to transfer this action to the Middle District of Pennsylvania. For the reasons discussed below, the motion to transfer venue is denied.

## I. Background

### a. The Parties

Martz is a bus company, based in Pennsylvania, that operates bus routes throughout the United States. (Compl. ¶ 3.) Martz leased and operated a 2008 MCI M819 bus bearing a Pennsylvania license plate (the "Bus").[1] Graham, employed by Martz, operated the Bus in the course and scope of his employment with Martz. (*Id.* ¶¶ 5, 10.) Tian was and is a resident of Rochester, New York. (*Id.* ¶ 2.) Plaintiff was and is a resident of Kings County, New York. (*Id.* ¶ 1.)

### b. March 6, 2011 accident

On or about March 6, 2011, Graham drove the Bus to New York, where he picked up passengers, including Plaintiff. (*Id.* ¶ 14.) While traveling north on Interstate 380 in Lackawanna County, Pennsylvania, the Bus and a 2007 Nissan (the "Car"), operated by Tian, "crashed," and the Bus overturned. (*Id* ¶¶ 15–18.) Another vehicle, occupied by Rene Phillips and operated by her husband Lamont Phillips, also crashed.[2] (Def. Mem. 2.) Mr. Phillips sustained fatal injuries. (*Id.*) Plaintiff "sustained severe, serious and permanent personal

---

[1] FH Family owned the Bus, which it leased to Martz. (July 13, 2013 Stipulation ¶¶ 1–2; Compl. ¶ 6.) Martz operated the Bus and was responsible for its repair and maintenance. (July 13, 2013 Stipulation ¶¶ 3–4.)

[2] Defendants submitted a "police crash report" from the accident which sets forth the details of the crash. (Police Crash Report dated July 22, 2011, annexed to the affirmation of Christina M. Rogers-Spang ("Rogers-Spang Aff.") as Ex. B.) According to the police crash report, the Phillips' vehicle was stopped on the left lane/shoulder area of the interstate after their vehicle was involved in a crash. (*Id.* at 14.) Another vehicle, Tian's Nissan, was stopped in the "right lane and middle of the interstate." (*Id.* at 15–16.) The Bus, was traveling north on the interstate when it moved from the right lane to the left lane/shoulder area to avoid colliding with the Nissan. (*Id.* at 15) As the Bus moved to the left lane, it struck Mr. Phillips and the Phillips' vehicle. (*Id.*) The Bus continued north and struck a guard rail located off the right side of the interstate. (*Id.*) The Bus then rolled over, coming to a final rest on its passenger side facing north in the left lane of the interstate. (*Id.*)

injuries." (Compl. ¶ 19.) Plaintiff alleges that the accident and Plaintiff's injuries were caused by the carelessness, recklessness and negligence of the Defendants in the ownership, operation, management, control and supervision of their respective motor vehicles. (*Id.* ¶ 20.)

## II. Discussion

### a. Standard of Review

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a); *see also New York Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 112 (2d Cir. 2010) (noting the district courts' discretionary power to transfer for the convenience of parties and witnesses (quoting 28 U.S.C. § 1404(a))). In deciding a motion to transfer venue pursuant to § 1404(a), a district court considers: "(1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, and (7) the relative means of the parties." *D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 106–07 (2d Cir. 2006) (alteration, citation and internal quotation marks omitted); *see also Lafarge*, 599 F.3d at 112 (listing factors). Courts have also recognized the importance of considering trial efficiency and the "interest of justice," based on the totality of the circumstances.[3] *See Recurrent Capital Bridge Fund I, LLC v. ISR Sys. & Sensors Corp.*, 875 F. Supp. 2d 297, 304 (S.D.N.Y. 2012) (including these additional factors); *Fellus v. Sterne, Agee & Leach, Inc.*, 783 F. Supp. 2d 612, 618 (S.D.N.Y. 2011) (same).

---

[3] The Second Circuit has yet to adopt these additional factors. *But see New York Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 112 (2d Cir. 2010) (recognizing that in deciding a motion to transfer a district court will consider, "*inter alia*," factors 1 through 7).

It is the burden of the moving party to "mak[e] a strong case for a transfer." *Filmline (Cross-Country) Prods., Inc. v. United Artists Corp.*, 865 F.2d 513, 521 (2d Cir. 1989) (citation and internal quotation marks omitted); *see also Xiu Feng Li v. Hock*, 371 F. App'x 171, 175 (2d Cir. 2010) ("the burden is on the movant to show that the transfer is justified"). Courts apply the "clear and convincing evidence standard" in determining whether to grant a motion to transfer, *Lafarge*, 599 F.3d at 113–14, and operate with considerable discretion, *see Forjone v. California*, 425 F. App'x 73, 74 (2d Cir. 2011) ("The determination whether to grant a change of venue requires a balancing of conveniences, which is left to the sound discretion of the district court." (citation and internal quotation marks omitted)).

### b. Application of the factors

Defendants argue that transfer to the Middle District of Pennsylvania will provide easier access to all witnesses and proof, and serve the interest of justice. (Def. Mem. 5.) Plaintiff argues that Defendants fail to show by clear and convicing evidence that transfer is justified. (Pl. Mem. 1.) Based on the assessment of the required factors below, the Court denies Defendants' motion to transfer venue to the Middle District of Pennsylvania.

### i. Plaintiff's choice of forum

Defendants argue that Plaintiff's choice of forum should be given minimum deference because the events underlying this action, namely the March 6, 2011 accident, occurred in Pennsylvania. (Def. Mem. 6.) Plaintiff contends that his forum choice should be given the standard substantial deference because many operative facts, including the evidence concerning damages, are connected to his choice of forum. (Pl. Mem. 4.)

Normally, a plaintiff's choice of forum warrants substantial deference. *See Cosa Xentaur Corp v. Bow*, No. 13-CV-2912, 2014 WL 1331030, at *13 (E.D.N.Y. Mar. 31, 2014) ("As a

4

general rule, 'a plaintiff's choice of forum is presumptively entitled to substantial deference.'" (quoting *Gross v. British Broad. Corp.*, 386 F.3d 224, 230 (2d Cir. 2004))). However, district courts have afforded less deference to the plaintiff's forum choice where the operative facts have little connection to the designated forum. *See Bow*, 2014 WL 1331030, at *13 (recognizing this caveat); *Guccione v. Harrah's Mktg. Servs. Corp.*, No. 06-CV-4361, 2009 WL 2337995, at *7 (S.D.N.Y. July 29, 2009) (same) (quoting *Mitsui Marine & Fire Ins. Co. Ltd. v. Nankai Travel Intern. Co., Inc.*, 245 F. Supp. 2d 523, 525 (S.D.N.Y. 2003)).

At the September 12, 2013 conference, the Court found that this factor clearly weighed in Plaintiff's favor, as Plaintiff initially brought this action in Kings County, Supreme Court. (Transcript of pre-motion conference dated September 12, 2013 ("Tr.") 28:13–16, annexed to the affirmation of Nicholas I. Timko ("Timko Aff.") as Ex. 1.) Although the accident at the heart of this action occurred in Pennsylvania, as will be discussed below, Plaintiff has presented a list of New York based doctors who will testify to the injuries Plaintiff suffered and continues to suffer. Therefore, the Court finds that some operative facts, namely those relating to damages, have a connection to the Plaintiff's designated forum. The Court finds that this factor weighs in Plaintiff's favor. *Cf. Allen v. Metro. Transp. Auth.*, No. 13-CV-3106, 2014 WL 549486, at *8 (S.D.N.Y. Feb. 11, 2014) (recognizing the forum where the plaintiff received medical treatment as part of the locus of operative facts analysis); *Leslie v. City of New York*, No. 12-CV-849, 2012 WL 1744842, at *1 (S.D.N.Y. May 15, 2012) (same); *but see Donde v. Romano*, No. 09-CV-04407, 2010 WL 3173321, at *2 (E.D.N.Y. Aug. 10, 2010) (declining to "accord great weight" to the plaintiff's forum choice even though the plaintiff's post-accident medical treatment took place there); *Guccione*, 2009 WL 2337995, at *7 (finding the plaintiff's choice of forum "not

5

controlling" where the plaintiff's medical treatment took place in New York but his alleged injury occurred in New Jersey).

### ii. Convenience of witnesses

Defendants argue that the Middle District of Pennsylvania is more convenient for the majority of witnesses. (Def. Mem. 7.) Plaintiff contends that the evidence Defendants present to support their argument is legally insufficient in form and content. (Pl. Mem. 10.)

"Convenience of both the party and non-party witnesses is probably the single-most important factor in the analysis of whether transfer should be granted." *Mazuma Holding Corp. v. Bethke*, --- F. Supp. 2d ---, ---, 2014 WL 814960, at *20 (E.D.N.Y. Mar. 3, 2014) (quoting *Fuji Photo Film Co., Ltd. v. Lexar Media, Inc.*, 415 F. Supp. 2d 370, 373 (S.D.N.Y. 2006)); *see also EasyWeb Innovations, LLC v. Facebook, Inc.*, 888 F. Supp. 2d 342, 350 (E.D.N.Y. 2012) (collecting cases). "[T]he weight given to the convenience of witnesses depends upon whether the party seeking transfer has described the witnesses' testimony so the court can qualitatively evaluate its materiality." *Excellent Home Care Servs., LLC v. FGA, Inc.*, No. 13-CV-05390, 2014 WL 652357, at *3 (E.D.N.Y. Feb. 19, 2014). "Generally, the moving party submits an affidavit explaining why the transferee forum is more convenient, which includes the potential principal witnesses expected to be called and the substance of their testimony." *EasyWeb*, 888 F. Supp. 2d at 350 (citation and internal quotation marks omitted).

### 1. Admissibility of witness statements

Defendants submit twelve unsworn statements addressing witness convenience. Specifically, four officers involved in the inspection of the accident scene have stated that they "refuse" to travel to Brooklyn, New York due to the hardship and inconvenience of traveling for

two hours (100 miles).[4] An additional officer, Trooper Mark D. Pajalich, signed a statement noting that travel to Brooklyn, New York would present a hardship but did not indicate that he "refused" to do so.[5] Three "enforcement officers" with the Pennsylvania Public Utilities Commission ("PUC") who participated in the inspection of the bus, state that they "would not agree to attend trial in Brooklyn, New York because it is required by [the PUC] that any PUC employee testifying must be accompanied by an attorney from the PUC."[6] Gary Ross, M.D., who performed the autopsy on the deceased Lamont Phillips,[7] Timothy Rowland, who transported Plaintiff from the scene of the accident,[8] and David Van Why, who as an emergency medical technician was dispatched to the scene of the accident, all state that traveling to

---

[4] (*See* Statement of Trooper James A. Hitchcock dated October 15, 2013, and November 13, 2013 ("Stm. Tpr. Hitchock"), annexed to " Rogers-Spang Aff. as Ex. C; Statement of Trooper Thomas J. Krempasky dated October 15, 2013, and November 13, 2013 ("Stm. Tpr. Krempasky"), annexed to Rogers-Spang Aff. as Ex. C; Sergeant William Hartshorn, Jr. ("Stm. Sgt. Hartshorn") dated October 15, 2013, and November 14, 2013, annexed to Rogers-Spang Aff. as Ex. C; Statement of Trooper William McDermott dated October 15, 2013 ("Stm. Tpr. McDermott"), annexed to Rogers-Spang Aff. as Ex. C.)

[5] (*See* Statement of Trooper Mark D. Pajalich dated October 18, 2013 ("Stm. Tpr. Pajalich"), annexed to Rogers-Spang Aff. as Ex. C.)

[6] (*See* Statement of Andrew J. Turriziani dated November 19, 2013 ("Stm. Turriziani"), annexed to Rogers-Spang Aff. as Ex. C; Statement of Lonnie Blank dated November 20, 2013 ("Stm. Blank"), annexed to Rogers-Spang Aff. as Ex. C; Statement of Thomas J. Kepping, Jr., dated November 19, 2013 ("Stm. Kepping"), annexed to Rogers-Spang Aff. as Ex. C.)

[7] Dr. Ross' statement states that he "conducted an autopsy of Jerold Williams." (Stm. Dr. Ross ¶ 6.) This is, of course, incorrect as Plaintiff is not deceased.

[8] Plaintiff argues that this statement is false as he does not possess any records or memory that Timothy Rowland, a Lackawanna County Coroner, transported Plaintiff from the scene of the accident. (Pl. Mem. 7.) This was likely a clerical error on Defendants' part. The affirmation of Christina M. Rogers-Spang states that Rowland transported the deceased Lamont Phillips, rather than Plaintiff, from the accident. (Rogers-Spang Aff. ¶ 26(j).)

Brooklyn, New York would present a hardship.[9]  Additionally, Defendants present an unsworn statement from Adam Fuhs, an independent investigator, stating that he personally contacted Dr. Ross, Rowland, Van Why and the Troopers identified above.  (*See* Statement of Adam Fuhs dated November 22, 2013 ("Stm. Fuhs"), annexed to Rogers-Spang Aff. as Ex. C.)   According to Fuhs, he "met with most of the individuals and they signed the Affidavits in [his] presence." (*Id.* ¶ 9.)  Plaintiffs argue that the Court should disregard all of these unsworn statements for noncompliance with 28 U.S.C. § 1746.  (Pl. Mem. 6.)

Section 1746 of the United States Code allows a court to recognize unsworn written statements so long as such statements include something to the effect of "I declare (or certify, verify, or state) under penalty of perjury under the laws of the United States of America that the foregoing is true and correct."  28 U.S.C. § 1746.  The Second Circuit has stated that "§ 1746 requires that a certification of the truth of a matter be expressly made under penalty of perjury. Any other result would be contrary to the plain language of the statute and the objective sought to be advanced by it."  *In re World Trade Ctr. Disaster Site Litig.*, 722 F.3d 483, 488 (2d Cir. 2013) (holding that the district court properly rejected interrogatory answers of certain plaintiffs that omitted the "under penalty of perjury" language); *see also Space Hunters, Inc. v. United States*, 500 F. App'x 76, 80 (2d Cir. 2012) (stating that handwritten notes not made "under penalty of perjury" likely constituted inadmissible hearsay).

Here, each of the unsworn statements presented by Defendants includes the following language: "I have read the foregoing statements and certify same to be true and correct to the

---

[9] (*See* Statement of Gary Ross, M.D., dated October 14, 2013 ("Stm. Dr. Ross"), annexed to Rogers-Spang Aff. as Ex. C; Statement of Timothy Rowland dated October 14, 2013 ("Stm. Rowland"), annexed to Rogers-Spang Aff. as Ex. C; Statement of David Van Why dated October 14, 2013 ("Stm. Van Why"), annexed to Rogers-Spang Aff. as Ex. C.)

best of my knowledge." (*See* Rogers-Spang Aff. Ex. C.) This language does not comport with the requirements of § 1746. Although a "technicality," the Court cannot accept these unsworn statements for the truth of the matter asserted. *See McGowen v. Four Directions Dev. Corp.*, No. 12-CV-00109, 2014 WL 916366, at *5 (D. Me. Mar. 10, 2014) ("Courts considering this statute are in near-universal agreement that an unsworn affidavit must aver that the contents are 'true and correct' and do so 'under penalty of perjury.'" (citing *In re World Trade Center Disaster Site Litig.* 722 F.3d at 488)). However, this decision does not automatically result in the denial of Defendants' motion as Defendants also present the affirmation of Christina M. Rogers-Spang, which identifies the witnesses, list their occupations and discusses their relevance. Such an affirmation is arguably sufficient to satisfy Defendants' burden. *See G. Angel Ltd. v. Camper & Nicholsons USA, Inc.*, No. 06-CV-3495, 2008 WL 351660, at *4 (S.D.N.Y. Feb. 8, 2008) ("A party moving for transfer of venue for the convenience of witnesses is not required to submit an affidavit from each witness."); *ESPN, Inc. v. Quiksilver, Inc.*, 581 F. Supp. 2d 542, 550 (S.D.N.Y. 2008) (same).

### 2. Convenience analysis

Liability and damages are in dispute in this action, therefore, according to Defendants, the individuals who were present at the scene of the accident and rendered medical assistance to Plaintiff are critical to this action. (Def. Mem. 7.) Defendants argue that these critical witnesses refuse to travel to the Court. (*Id.*) Plaintiff argues that the unsworn statements fail to adequately detail the content of each witness' testimony and urges the Court to recognize the importance of Plaintiff's witnesses, all of whom are in New York. (Pl Mem. 10.)

Defendants have shown that some material witnesses would be inconvenienced by denying the instant transfer motion. With respect to the Troopers identified, each personally

viewed the accident scene, the vehicles involved and the victims of the accident.[10] (*See* Rogers-Spang Aff. ¶ 26(a)–(e).) Although Defendants do not state the facts to which these troopers will testify with great specificity, as the Court has already noted, first responder testimony is important to the issue of liability.[11] (*See* Tr. 21:12–16 (noting the testimony of first responders, investigators, and police officers will be relevant to the issue of liability).) Just as relevant to the issue of liability would be the testimony of the PUC employees,[12] who inspected

---

[10] Plaintiff argues that many of the witnesses identified by Defendants will be of limited value to the jury. (Pl. Mem. 11.) For support, Plaintiff points to the deposition of Trooper Pajalich. However, Trooper Pajalich's deposition does not support Plaintiff's argument. In his deposition, Trooper Pajalich states that he took notes, spoke to the officer on the scene, and went around taking the registration plates off vehicles and conducting interviews. (Deposition of Trooper Mark Pajalich ("Dep. Tpr. Pajalich") 40:11-16; annexed to Timko Aff. as Ex. 12.)

[11] Defendants state that Trooper Krempasky "conducted traffic control and assisted at the scene of the subject accident" while Trooper McDermott "assisted with the investigation at the scene." (Rogers-Spang Aff. ¶ 26(c), (e).) Such a terse description fails to convince the Court of the materiality of these troopers' potential testimony, especially in light of the availability of Trooper Pajalich, who led the investigation, Trooper Hitchcock, who took photographs at the scene, and Sergeant Hartshorn, who assisted at the scene by taking measurements of the points of impact and final positions of the involved vehicles. (*Id.* ¶ 26(a)–(b), (d).) Without more, the Court finds that Defendants have failed to show by clear and convincing evidence that Trooper Krempasky's or Trooper McDermott's testimony is material and unique from that of the other officers. *See Virgin Enterprises Ltd. v. Am. Longevity*, No. 99-CV-9854, 2001 WL 34142402, at *10 (S.D.N.Y. Mar. 1, 2001) (doubting the materiality of the plaintiff's potential witnesses where "[t]he exact nature of the proposed testimony to be given by these witnesses is unclear, and there seems to the Court the possibility that some of it may be duplicative or otherwise marginal."); *Westwood Ventures, Ltd. v. Forum Fin. Grp.*, No. 97-CV-514, 1997 WL 266970,*4 (S.D .N.Y. May 19, 1997) ("It is not the number of prospective witnesses that determines the appropriateness of a transfer but, rather, the materiality of their anticipated testimony.")

[12] Plaintiff argues that, to the extent that the testimony of the PUC employees is deemed relevant, three witnesses testifying to the same inspection would be unnecessary and duplicative. (Pl. Mem. 11.) Plaintiff then suggests that only the inconvenience of one PUC employee should be considered. (*Id.*) Because the Defendants provide form statements, completely identical to one another, the Court agrees with Plaintiff and only considers the inconvenience of one PUC employee. *See Herbert*, 325 F. Supp. 2d at 287 (recognizing the possibility that five witnesses testifying to the same factual point may be unnecessary but still choosing to consider the

the bus after the accident, and the testimony of Dr. Ross, who conducted the autopsy of the deceased Lamont Phillips. However, Defendants fail to demonstrate how the testimony of Rowland, who only transported the deceased Phillips from the accident to the County Coroner's Officer, or the testimony of Van Why would be material to the issue of liability.[13] Defendants' failure to explain Rowland's and Van Why's testimony prevents the Court from qualitatively assessing the importance of these potential witnesses. *See Allen*, at *5 ("When weighing the convenience of the witnesses, a court does not merely tally the number of witnesses who reside in the current forum in comparison to the number located in the proposed transferee forum. Instead, the court must qualitatively evaluate the materiality of the testimony that the witnesses may provide." (alteration, citation and internal quotation marks omitted)); *Herbert Ltd. P'ship v. Elec. Arts Inc.*, 325 F. Supp. 2d 282, 286 (S.D.N.Y. 2004) ("the court must qualitatively evaluate the materiality of the testimony that the witnesses may provide").

In opposition to Defendants' witness convenience argument, Plaintiff presents his own list of witnesses, all of whom live in New York. (Pl. Mem. 12.) Specifically, Plaintiff identifies several doctors, Dr. Yong Chi, Dr. Mehran Monouel, Dr. Harshad C. Bhatt, Dr. Harold S. Parnes, and Dr. Steve B. Losik, who have all participated in Plaintiff's post-accident care. (*See* Timko Aff. Exs. 19–23.) Plaintiff argues that these witnesses will testify to the extent and

---

inconvenience of one of those witnesses).

[13] The Court notes that the materiality of Van Why's testimony is dubious as he denied involvement at the scene of the accident that would be relevant to the issue of liability such as witnessing the crash, viewing the scene of the crash and giving medical assistance to Plaintiff. *See Herbert Ltd. P'ship v. Elec. Arts Inc.*, 325 F. Supp. 2d 282, 286 (S.D.N.Y. 2004) ("A party seeking to transfer venue may not artificially inflate the number of witnesses to be inconvenienced absent transfer by listing witnesses whose testimony is not material." (citation and internal quotation marks omitted)).

impact of Plaintiff's injuries. (Pl. Mem. 12.) The Court previously recognized that a jury would be entitled to hear from Plaintiff's various treating physicians. (Tr. 37:23–38:2.)

In sum, Defendants identify at least seven material witnesses who would be inconvenienced by traveling to this Court to testify. However, Defendants offer little in the way of detail and make no effort to contest the materiality of Plaintiff's identified New York-based witnesses.[14] The Court finds that Defendants fail to show, by clear and convincing evidence, that the majority of material witnesses would be inconvenienced by traveling to this Court. Given that material witnesses will be inconvenienced no matter the outcome of this motion, this factor neither weighs for or against transfer.

### iii. Location of relevant documents and relative ease of access to sources of proof

Defendants argue that transfer to the Middle District of Pennsylvania is the more convenient forum for access to sources of proof. However, Defendants fail to identify any relevant documents or sources of proof. Plaintiff argues that this factor is neutral as discovery has already commenced and both parties now possess the relevant documents. The Court agrees. *Cf. ESPN*, 581 F. Supp. 2d at 548 ("In an era of electronic documents, easy copying and overnight shipping, this factor assumes much less importance than it did formerly.").

### iv. Convenience to the parties

Defendants argue that this factor weighs in their favor because Graham, the driver of the bus involved in the subject accident, resides in Lackawanna County, Pennsylvania, Tian, the driver of another vehicle involved in the subject accident, resides in an area of New York that is

---

[14] Defendants do argue that these witnesses can "appear by videotape or live." (Def. Mem. 8.) Such a response is inadequate. *See ESPN, Inc. v. Quiksilver, Inc.*, 581 F. Supp. 2d 542, 550 (S.D.N.Y. 2008) (noting that swapping one party's inconvenience for another's does not support transfer).

geographically closer to Lackawanna County, Pennsylvania than Brooklyn, New York, and the corporate Defendants are located in Pennsylvania and their employees reside and work in Pennsylvania. Defendants provide no evidence concerning Tian's location or his forum preference.[15] Defendants fail to show, by clear and convincing evidence, that Tian would be inconvenienced by traveling to this Court versus the Middle District of Pennsylvania. The Court is then left to decide whether to inconvenience Plaintiff, who resides in New York, or Defendants. *See Bethke*, --- F. Supp. 2d at ---, 2014 WL 814960, at *20 ("In terms of the convenience of the parties, the Court recognizes that where transfer would merely shift the inconvenience from one party to the other, the Court should leave plaintiff's choice of venue undisturbed." (alteration, citation and internal quotation marks omitted)). Confronted with such a balance, the Court declines to disturb the Plaintiff's forum choice. *See Liberty Mut. Ins. Co. v. Fairbanks Co.*, No. 13-CV-3755, 2014 WL 1796005, at *11 (S.D.N.Y. May 5, 2014) ("The convenience of the parties favors transfer when transfer would increase convenience to the moving party *without* generally increasing the inconvenience to the non-movant." (emphasis added)); *see also SBAV LP v. Porter Bancorp, Inc.*, No. 13-CV-372, 2013 WL 3467030, at *8 (S.D.N.Y. July 10, 2013) ("A defendant moving for transfer must show both that the original forum is inconvenient for it and that the plaintiff would not be substantially inconvenienced by a transfer." (citation and internal quotation marks omitted)). Therefore, this factor weighs against transfer.

---

[15] At the September 12, 2013 conference, Tian's counsel did represent to the Court that the Middle District of Pennsylvania would be the more convenient forum.

13

####  v.   Locus of operative facts

"Where the operative facts occurred is an obvious factor to consider." *Pall Corp. v. PTI Technologies, Inc.*, 992 F. Supp. 196, 200 (E.D.N.Y. 1998). The accident took place in the Middle District of Pennsylvania. This factor weighs in favor of transfer.

####  vi.   Availability of process to compel the attendance of unwilling witnesses

Defendants argue that seven material witnesses will refuse to attend trial in Brooklyn, New York. (Def. Mem. 7.) Rules 45 of the Federal Rules of Civil Procedure prohibit a subpoena from directing a witness to travel more than 100 miles. *See* Fed. R. Civ. P. 45(c)(1)(A).

Defendants only state that "a number of the aforementioned individuals with material information in this matter have certified that they refuse to travel to Brooklyn." (Rogers-Spang Aff. ¶ 26.) Defendants fail to identify with particularity which witnesses refuse to testify. Such a nebulous assertion is insufficient to satisfy Defendants' burden. *See Bow*, 2014 WL 1331030, at *14 (disregarding the plaintiff's argument that it would not be able to compel a witness to testify when the plaintiff failed to allege that the specific witness would be unwilling to testify in the transferee court); *McGraw-Hill Companies Inc. v. Jones*, No. 12-CV-7085, 2014 WL 988607, at *9 (S.D.N.Y. Mar. 12, 2014) ("Griffin asserts that it favors transfer of the case, but does not explain this contention or identify any individual who might not be subject to subpoena power or who would be unwilling to testify in New York should the case remain here."). Even assuming that the unsworn statements discussed earlier were admissible, they would not prove helpful to Defendants' argument. With respect to the troopers, Trooper Pajalich did not state that he refused to testify. Of those troopers who did so refuse, Sergeant Hartshorn works in Swiftwater, Pennsylvania, (Stm. Sgt. Hartshorn ¶ 2), and Trooper Hitchcock works in Dunmore,

Pennsylvania, (Stm. Tpr. Hitchcock ¶ 2), which are both less than 100 miles away from this Court and, therefore, within the Court's subpoena power, (Timko Aff. Exs. 27–28).[16] That leaves Trooper Krempasky and Trooper McDermott as witnesses outside the scope of the Court's subpoena power. However, the Court has already noted that the materiality of Trooper Krempasky's and Trooper McDermott's testimony has not been shown by clear and convincing evidence.

With respect to the PUC employees, they each stated that they "would not agree to attend trial in Brooklyn, New York because it is required by [the PUC] that any PUC employee testifying must be accompanied by an attorney from the PUC." (*See* Stm. Turriziani; Stm. Blank; Stm. Kepping.) However, Defendants have offered no evidence to support the proposition that the PUC would refuse to send an accompanying PUC attorney to this Court. Assuming that the PUC would send an accompanying PUC attorney, it is not clear that the PUC employees would still object to testifying in this Court. Therefore, the Court finds that Defendants have not shown by clear and convincing evidence that the PUC employees would not voluntarily testify. *Cf. Bethke*, --- F. Supp. 2d at ---, 2014 WL 814960, at *21 (finding that this factor militated against transfer where the moving party did not present evidence that any person

---

[16] The 100 mile reach of Rule 45 is measured in a straight line not via surface streets. *See Berger v. Cushman & Wakefield of Pennsylvania, Inc.*, No. 12-CV-9224, 2013 WL 4565256, at *11 (S.D.N.Y. Aug. 28, 2013) (noting that the 100 mile radius is measured in a straight line); *Universitas Educ., LLC v. Nova Grp., Inc.*, No. 11-CV-1590, 2013 WL 57892, at *2 (S.D.N.Y. Jan. 4, 2013) (same); *QBE Ins. Corp. v. Interstate Fire & Safety Equip. Co., Inc.*, No. 07-CV-1883, 2011 WL 692982, at *6 (D. Conn. Feb. 18, 2011) (same).

was unwilling to testify in New York). Defendants also fail to present clear and convincing evidence that any of the other identified witness would refuse to testify in this district.[17]

Although Defendants identify two witnesses, Trooper Krempasky and Trooper McDermott, who will not voluntarily travel to Brooklyn, New York and are outside of this Court's subpoena power, the Court finds that Defendants fail to show by clear and convincing evidence that the testimony of these two witnesses is material and unique, rather than duplicative.[18] This factor weighs against transfer.

### vii. Relative means of the parties

Plaintiff argues that he is of "modest means," and that travelling to Pennsylvania will leave him and his family members in the "unenviable position of potentially having to purchase bus tickets from the same bus company which caused his injuries." (Pl. Mem. 15.) Defendants argue that any imbalance in the relative means of the parties is ameliorated by their offer to provide Plaintiff with transportation and lodging in Pennsylvania during trial. (Def. Mem. 6.)

---

[17] Rogers-Spang affirms that in addition to those seven witnesses who certified in writing that they refuse to travel to Brooklyn, three other potential witnesses stated in person to Defendants' investigator that they refuse to travel to Brooklyn, New York. (Rogers-Spang Aff. ¶ 54.) Defendants have not provided any information about these three witnesses who have expressed their verbal refusal to travel to Brooklyn, New York and the Court is therefore unable to conduct any analysis regarding these three witnesses. Defendants fail to meet the clear and convincing evidence burden.

[18] Rule 45 of the Federal Rules of Civil Procedure provides, *inter alia*, that a "subpoena may command a person to attend a trial, hearing, or deposition . . . within 100 miles of where the person resides, is employed, or regularly transacts business in person." Fed. R. Civ. Pro. 45(c)(1)(A). According to Plaintiff, because the troopers regularly travel great distances, "the 'regular transaction of business' would certainly bring any individual – such as first responders or coroners – who responded to the subject crash within the purview of the 100-mile radius." (Pl. Mem. 14.) Plaintiff cites to no authority to support his peculiar interpretation. The Court finds it without merit.

Here, the difference in means between the parties is ostensibly substantial but neither party provides any evidence to guide the Court's assessment. Therefore, the Court finds this factor to be neutral. *See Bow*, 2014 WL 1331030, at *15 (finding this factor to weigh in favor of the defendant (individual) over the plaintiff (corporation) in light of the defendant's presentation of his financial condition via sworn declaration); *Bethke*, --- F. Supp. 2d at ---, 2014 WL 814960, at *22 (finding this factor to be neutral absent any evidence of the parties' finances); *see also It's a 10, Inc. v. PH Beauty Labs, Inc.*, 718 F. Supp. 2d 332, 338 (S.D.N.Y. 2010) ("a party arguing for or against a transfer because of inadequate means must offer documentation to show that transfer (or lack thereof) would be unduly burdensome to his finances" (alteration, citation and internal quotation marks omitted)); *but see Chong v. Healthtronics, Inc.*, No. 06-CV-1287, 2007 WL 1836831, at *13 (E.D.N.Y. June 20, 2007) ("Since plaintiff is an individual and defendant is a corporation, the 'relative means of the parties' factor weighs in favor of plaintiff.").

### viii. Trial efficiency and the interest of justice

Defendants argue that trial efficiency and the interest of justice compel transfer because Pennsylvania substantive law will govern this dispute, Pennsylvania courts have an interest in resolving controversies that occur in Pennsylvania, and there are currently sixteen or seventeen related actions ongoing in the Pennsylvania Court of Common Pleas of Luzerne County. (Def. Mem. 8–10.) Plaintiff argues that New York has an interest in seeing its residents compensated for personal injury and in ensuring the safe operation of vehicles licensed to travel on its roads. (Pl. Mem. 15.) Plaintiff also argues that the controlling substantive law should be afforded little weight by the Court. (*Id.*) Plaintiff does not address the related actions ongoing in Pennsylvania state court. After assessing Defendants' arguments, the Court finds that the interests of justice only slightly favor transfer.

With respect to the competing interests of New York and Pennsylvania courts in deciding the instant dispute, the Court credits both Defendants' and Plaintiff's arguments, and finds that point neutral. As to trial efficiency, Defendants argue that transfer to the Middle District of Pennsylvania will facilitate the coordination of discovery with the ongoing litigation in Pennsylvania state court. (Def. Mem. 10.) However, Defendants fail to explain how the Middle District of Pennsylvania will be able to better coordinate discovery with the Pennsylvania state court. Undercutting Defendants' argument, Magistrate Judge Marilyn D. Go, currently overseeing discovery in this action, is cognizant of the ongoing Pennsylvania state actions and has encouraged the parties to coordinate discovery accordingly. (*See* Minute Entry dated August 22, 2013.) Defendants fail to clearly and convincingly demonstrate how transfer will facilitate discovery, accordingly, the Court finds this point neutral as well. Finally, the Court agrees with Plaintiff in finding that the Middle District of Pennsylvania's familiarity with substantive Pennsylvania law should be accorded little weight, especially here where there are no issues of any particular complexity or novelty. *See Merkur v. Wyndham Int'l, Inc.*, No. 00-CV-5843, 2001 WL 477268, at *5 (E.D.N.Y. Mar. 30, 2001) ("Where an action does not involve complex questions of another state's laws, courts in this district accord little weight to this factor on a motion to transfer."); *Vassallo v. Niedermeyer*, 495 F. Supp. 757, 760 (S.D.N.Y. 1980) ("The fact that the law of another jurisdiction governs the outcome of the case is a factor accorded little weight on a motion to transfer, however, especially in an instance such as this where no complex questions of foreign law are involved.").

In sum, the Court finds that the two factors — the locus of operative facts and the transferee court's familiarity with the applicable substantive law — favor transfer, three factors — Plaintiff's choice of forum, availability of process to compel the attendance of unwilling

witnesses and the convenience of the parties — weigh against transfer, and the remaining factors do not weigh in favor or against transfer.  In addition, the Court recognizes that party convenience should be afforded greater weight than other factors, and that the transferee court's familiarity with the applicable substantive law merits little weight.  Thus, the Court finds that the balance of the factors weighs against transfer of this action.

### III. Conclusion

For the foregoing reasons, Defendants' motion to transfer this action to the Middle District of Pennsylvania is denied.

SO ORDERED:

s/ MKB
MARGO K. BRODIE
United States District Judge

Dated: May 14, 2014
Brooklyn, New York